Putnam J.
The plaintiffs declare in covenant, as they are overseers of the poor of the town of Phillipston. It is objected, that the indentures declared upon were made by the selectmen of that town, and not by the overseers of the poor. But the answer is furnished by the statute of 1793, c. 59, § 1, which provides, that where there are not persons specially chosen to be overseers of the poor, “ the selectmen shall be overseers of the poor ex officio.'’'1 It is admitted that the persons who executed the indentures were duly chosen selectmen, and that no persons were specially chosen overseers of the poor. So the case is within the statute. And it was not necessary for the plaintiffs to state the manner in which the former overseers became such, whether by special election to that office, or whether it devolved upon them by force of the statute, in consequence of their being elected to be the selectmen of the town. It is sufficient that they were legally authorized to act as overseers of the poor.
It has been further objected, that the covenants are dependent, and that the defendant, having proved that the apprentice violated the engagement on his part by stealing the property of his master, should be excused from performing the covenants on his part. Whether the covenants are fo be considered as dependent, or as independent, must be *486 decided by the intent of the parties, having regard to the whole instrument ; no particular form of words being requisite to constitute a test whether the covenants are or are not dependent.[1]
By the indentures under consideration some of the cov enants were to be performed by the master presently, and some at a remote period. And so on the part of the apprentice ; his duty was to be a continued service until the end of his apprenticeship. We are of opinion that these covenants are independent. If it were otherwise, and the master should not supply a sufficient quantity of food for a single day, or the apprentice should disobey a single command, the contract would be dissolved, and the apprentice would lose the benefit of the instruction which the legislature intended should be given to him. Winstone v. Linn, in 1 Barn. & Cressw. 460, is a case much to this point. The declaration was on a covenant of apprenticeship for not instructing, &c. ; plea, that the apprentice would not serve, and particularly, that he refused to do certain things which he was bound to do, and, contrary to his duty, withdrew, &c. ; replication, that the apprentice afterwards returned and requested the defendant to receive and instruct him, but that the defendant refused to do it; to which there was a demurrer. Bayley J. states the question to be, whether the master is at liberty to insist that the indenture is no longer binding upon him, because the apprentice has unwarrantably disobeyed his commands. He observed that such indentures generally contain reciprocal covenants by each party, and that “ those covenants are mutual and independent, entitling each party to a remedy for a breach of them.” If it were proved that the apprentice embezzled or stole his master’s goods, it would not follow that the master might of his own authority put an end to the contract. It might be good evidence for the consideration of the Court of Common Pleas, upon a complaint of the master for gross misbehavior of his apprentice, but it would not per se give the master a right to discharge the apprentice. By the 20 Geo. 2, c. 17, it is provided, that the *487 indentures may be discharged upon complaint made by the master, to two justices, of the misconduct of the apprentice, and Holroyd J., in the case above cited from Barn. & Crrsswell, refers to that statute as proving, that the master, by his own act, had no authority to put an end to the contract. This reasoning applies directly to the case at bar.
So the indenture is not avoided if the apprentice marries. Com. Dig. Justices of the Peace, B, 55.
It has however been contended for the defendant, that the overseers were not personally liable, and that the engagement of the infant was the only consideration for the covenants on the part of the defendant, and not sufficient to support them. But, by force of the indentures and of the statutes of the commonwealth, the infant did become the servant of the defendant. The defendant became entitled to the services of his apprentice, and had by law a right to inflict proper correction for his offences. He might cause him to be committed to the house of correction in certain cases, and in case of gross misbehavior the Court of Common Pleas is authorized to discharge the indenture. That authority is given by St. 1794, c. 64, § 4. Upon the same principle it was held in Gylbert v. Fletcher, Cro. Car. 179, that covenant would not lie, either by the common law or by St. 5 Eliz. c. 4, against an infant, but that the remedy for misbehavior was by correcting him, or complaining to a justice of the peace to have him punished. It is sufficient that the law has provided a remedy for the master. There seems therefore no want of consideration for the covenants of the defendant.[1]
The case of Rex v. Inhabitantes de Hales Owen, 1 Str. 99, proves that the plea, that the apprentice became sick of an incurable disease, is not a sufficient answer to the action. In that case the servant was afflicted with the king’s evil and became incurably lame ; and it was determined that the master took him for better or worse, and was to provide for him m sickness.[2] A different rule was applied where the apprentice became an idiot. Vin. Abr. tit. Apprentice, H, *488 pl. 5 ; Anonymus, Skin. 114, pl. 7. The court of sessions in such a case discharged the master.
But there is an objection which is fatal to the plaintiffs’ recovery upon this declaration. They declare upon a deed with a proferí in curia, and to support the issue joined upon the plea of non est factum, they produce a paper which was signed and sealed by the defendant, but from which his seal and signature and part of the words of the deed had been cut out before the action was commenced. The circumstances attending this mutilation of the deed are stated in the report of the judge ; and the Court are of opinion, that the act was not warranted from the consent of one of the overseers.[1] He was not authorized to act for his brethren, and the case stands just as it would, if the defendant had without any color of authority torn off his seal. The question then is, whether a paper in such a condition can be received on this issue as the deed of the party at the time of the plea pleaded. And the Court are of opinion that it cannot. When a deed is declared upon with a profert, it is by the intendment of the law in the actual possession of the court. Vin. Abr. tit. Faits, (M. a. 12,) pl. 3. It is the court, and not the party, which grants the oyer. The instrument is to be produced, that the court may decide whether it be in legal sense a deed. Now if the seal of a party be torn off, the mutilated paper cannot be shown as a deed. Matheioson’s case, 5 Co. 23. So if, after it was executed, it should be altered in a material point by the plaintiff himself, or by a stranger without his privity. Pigot's case, 11 Co. 27. If the seal be torn off, and after sewed together again, yet the deed is void by it. Vin. Abr. tit. Faits, (X) pl. 3 ; Perk. § 135. So if the seal of wax should be by casualty melted off, while the deed was in the hands of a stranger. Vin. Abr. ubi sup. pl 8. So if the seal were eaten off by mice. Com. Dig. Fait, F, 2. So if the deed be once sufficiently sealed, and the print of the seal be bruised, so as it doth not appear that it was sealed, it is insufficient. Perk. § 135. See also to these points, WhelpdaWs case, 5 Co. 119. We *489 therefore conclude, that the paper offered by the plaintiffs was not the deed of the defendant at the .time of the plea pleaded, and consequently that that issue should have been found for the defendant, and not for the plaintiffs.
It has been however contended, that the defendant cannot avail himself of this matter, as the deed was destroyed by his own unlawful act. We are to consider merely what evidence will support the issue. If the defendant had, before the action, taken the deed and burnt it, and the plaintiffs had declared that they had the deed in court to produce, we could not upon such evidence adjudge the issue to be proved on the part of the plaintiffs. The defendant denies the allegation of the plaintiffs in the case supposed. They are obliged to confess that they have no such deed to produce as they declare upon, but they offer evidence tending to show that it is altogether the fault of the defendant which has prevented them from producing it. But that state of things existed at the time when the action was comm'enced, and the plaintiffs should have declared accordingly. To be sure, the right to the property is not destroyed, as is the deed, by the flames, or by the wrongful act of the defendant, or otherwise, but the plaintiff should declare according to the facts. If he had a deed, and it has been lost by time c accident, or has been destroyed by the defendant, or other wise, he should state those facts as the reason why he could not declare with a proferí. In the case at bar, the Court must say that a paper, in the condition of that produced by the plaintiffs, was not the deed of the defendant at the time when he pleaded that it was not. The fact is not altered by the consideration of the circumstances which destroyed the deed. Whether the seal were torn off by the obligor or by a stranger, by accident or design, it is not material to settle. The Court see that the paper produced has no signature nor seal, and so is no deed, and they are to tiy the cause upon the issues which the parties join.
There is a case cited in Vin. Abr. tit. Faits, (X) pl. 8, determined in 43 Eliz., where one had a deed, and the party from whom he had it took it from him and pulled off the seal, and it was ruled that he might plead this without showing *490 the deed, but should plead that his adversary had done this. That course of pleading agrees with Read v. Brookman, 3 T. R. 151, where it was held, that a deed lost by time and accident might be pleaded without a profert. The circumstances which excuse the profert should be stated. See Totty v. Nesbit, 3 T. R. 153, in not. Per Buller J. 11 You have declared with a profert ; and after that the court cannot say that the defendant shall not have oyer. S. P. Matison v. Atkinson, ibid. So in Smith et al. v. Woodward, 4 East, 586, where the defendant had taken aioay the original deed, and the plaintiffs declared with a profert, it was held that they could not be permitted to give a copy in evidence. In that case the plaintiffs were parish officers, and on the issue of non est factum, they proved, that the defendant got the deed before the action was brought, and acknowledged that he burnt it. The opinion of the court was given by Lord Ellenborough, who said, “ There is no case, where the issue being whether such a deed, proffered by the plaintiff to the view of the court, and supposed to be in court at the time, be or be not the deed of the defendant, in which it has ever been decided that any thing can dispense with the production of the deed itself.” We are aware that this is a mere technical difficulty, and that the merits of the case are with the plaintiffs. The verdict, notwithstanding, must, for the reasons above stated, be set aside.[1]
Note. — The cause was continued on a motion of the plaintiffs to amend their declaration.[2]

 See Couch v. Ingersoll, ante, 292, and note to that case.

 See 1 Chit. Gen. Pract. 70, 71.

 Easley v. Craddock, 4 Randolph, 423.

 See ante, 332, note 1.

 See Cutts v. United States, 1 Gallison, 69 ; Smith v. Emery, 7 Halsted, 53 ; Rees v. Overbaugh, 6 Cowen, 648, 649 ; Bolton v. Carlisle 2 H. Bl. 259 ; Hawley v. Peacock, 2 Campb. 557 ; Hendy v. Stephenson, 10 East, 55 ; 2 Stark. Ev. (4th Am. ed.) 475, 476 ; Branch v. Riley, 1 Root, 541 ; Kelly v. Riggs, 2 Root, 126 ; Hinsdale v. Miles, 5 Connect. R. 331.

 See Powers v. Ware, 4 Pick. 106.